Good morning, John Claude Andre on behalf of the United States, and I will do my best to save two minutes for rebuttal. California first-degree residential burglary has been a residual clause offense in this court for over 20 years now. Nothing that has happened since this court decided as much in Becker undercuts that conclusion. In fact, all of the subsequent developments reaffirm that conclusion. Admittedly, in Becker, this court was construing a slightly different version of the residual clause, but the current version is actually broader and therefore would only help the government's position here in establishing that defendant's first-degree residential burglary offense qualifies. This court, in Fesero Lopez, did state in DICTA, that was a 2L1.2 case, an immigration guideline case, did state just the opposite, that the old 16B definition for the residual clause that Becker construed was broader, but it clearly is DICTA because the court was not asked to address the meaning of the residual clause in that 2L1.2 case. And as the Supreme Court said in Leocal and six of this court's sister circuits have recognized the current definition is broader and therefore Becker remains controlling in our view. But even if we table that for a little bit and look and see what's happened since, I think that Jackson, Williams, James, Mayer, and Terrell have removed any daylight that might be surrounding Becker. In particular, in Williams, this court found that that particular defendant's second-degree burglary qualified under the residual clause and what was key there is that the court actually applied the modified categorical approach and noted that it was actually a residential burglary. In other words, it should have been a first-degree burglary for whatever reason the California prosecutors pleaded the defendant down to the lesser and clearer defense of second-degree burglary. But because what the defendant did in that case is exactly what the defendant did in this case, and in that case, Williams, the court was construing the current version of the guideline, we believe that Williams, again, removes any daylight that might be surrounding Becker. Same thing with Jackson. In Jackson, this court was construing attempted first-degree residential burglary. And there, you don't even necessarily have to have an entry. So clearly, attempted burglary is broader than actual burglary, and the court had no problem recognizing that that attempted burglary offense nonetheless qualified under the current residual clause. Again, removing any daylight that might have been surrounding Becker. Now, if we fast forward to the more recent developments with the Supreme Court and this court regarding active residual clause, I think it just basically establishes that the government must prevail on this issue. In James, the Supreme Court was considering whether Florida attempted burglary would qualify, and the court had no problem finding as much, even though, like in the Jackson case, there was no entry at all. Again, you had a broader statute or a broader possible universe of facts, and nonetheless, the Supreme Court said, that qualifies, because here, the test is inherently probabilistic. The plain text of the residual clause asks whether there's a serious potential risk of injury. Those are probabilistic terms, and they're right there in the text. Therefore, the court said, we consider the ordinary case. Since then, this court in Mayer, and then again in Terrell, has seized on James's ordinary case test and said, we apply a most of the cases test. Here, it's clear that California first-degree burglary in the ordinary case presents a serious potential risk of injury. Now, the defendant has come forward with three examples. Three examples of atypical applications of California first-degree burglary. In those cases, there was not an unlawful entry, and in those cases, the defendant was there to commit some kind of a fraud. He's only come up with three cases over an 18-year period. And if the court, the court's law clerks, were to go onto the California Attorney General's website, you would find that California actually convicts approximately 150,000 defendants of first-degree residential burglary every year. The fact the defendant's been able to marshal three cases out of 2.5 million simply does not establish that his cases somehow reflect the ordinary case. In fact, I think the opposite is true. The ordinary case is an unlawful entry burglary. The ordinary case is not a burglary to commit a fraud. It's to steal something. And therefore, James, Mayer, and Terrell are satisfied. What we think is also particularly telling is that there have been en banc calls in both Mayer and Terrell. And in those two cases, the dissenters made the precise arguments that the defendant is making here today, which is that the elements of California first-degree burglary don't match with listed burglary in the guideline. And that there are atypical applications. And in both of those cases, in Mayer, only three judges dissented from denial of rehearing en banc, and in Terrell, only four. Are you suggesting that it would make any difference if more judges had dissented or if no judges had dissented from the – I'm not sure what your point is about the dissent from denying rehearing en banc. My point, Your Honor, is that it seems that an overwhelming – well, certainly a majority of this Court. I wouldn't – I wouldn't go there, because there are many reasons why. It's like denial of cert. It has no – speaking only for myself, it has no precedential meaning. I understand. But I guess I'm using it more as an atmospheric point, not as a binding precedent in a sense, but it's more that if the defendants' arguments were so compelling, I would think that we would see more. We would see either more judges dissenting or we would see one of these two cases where the dissenters have articulated the same parade of horribles that the defendants articulated. We would see more judges stepping up and intervening and not leaving Mayer and Terrell on the books. But the reality is they are on the books, and we do think they're controlling. So, again, I'm not suggesting that we somehow consider the dissents or the denials binding, but, again, that they breathe a little extra light into and shed a little more light on the decisions in Mayer and Terrell. And, again, in particular, that the dissenters were able to do what the defendants in those cases weren't, which was marshal examples like defendant's three examples that are atypical and non-generic. And, nonetheless, the law stands. If the Court has no further questions, I will save my time for rebuttal. Do we need to wait until the Aguila case has been decided en banc? In this case, not at all. The two inquiries here, or the two potential inquiries, are entirely distinct. Aguila Montes de Oca concerns whether you can use the modified categorical approach to narrow an overbroad element. Their entry, whether you could use the modified categorical approach to narrow entry to unlawful entry by looking at judicially noticeable State court records. We didn't make an – this is an affirmative government appeal. We didn't put those records before the Court because we don't think it's appropriate for – So this is purely a categorical case, up or down? Yes, Your Honor. Okay. Because we don't believe it's appropriate to ask the Court of Appeals to reverse the district court with judicially noticeable documents. It's a different animal if we're asking the district – if we're asking this Court to affirm. But here, in this case, the government is asking this Court to reverse Judge Klausner, and so we didn't put those records before this Court, and there's no modified categorical approach inquiry to be conducted. So we don't think that Aguila Montes de Oca somehow infects this case at all. Thank you, counsel. You may save the rest of your time for rebuttal. Good morning, Your Honors. May it please the Court, Adrian Vandercapel and on behalf of the appellee, Daniel H. Park. By way of an opening statement, well, first of all, I'd like to say that I just – I rest on the arguments that we've made in our reply brief. But by way of an opening statement, I think that it's clear that the jurisprudence requires a serious risk of injury as is set forth in the guidelines themselves in the residual clause that we're arguing about today with regard to the defendant's conduct. And to the extent that the California Urgulary Statute also encompasses conduct that can be committed during a consensual entry, such as the cases that I cited, the State of California cases that I cited, there is no risk of harm in those cases. How is your position consistent with Terrell? Well, in Terrell, as well as I believe in James and Mayer, the residual clause inquiry requires the defendant's prior conviction to be roughly similar in kind to the enumerated offenses. And to that extent, it requires a serious risk of injury. And it also requires that the offense have as an element the attempted or threatened use of force. And that just doesn't exist in California convictions that are consensual in nature. But breaking into a dwelling place often leads to violence, doesn't it? Well, it could, and especially breaking and entering in the generic sense of a burglary, but I don't believe that it comes close when, for example, a person walks up to a house, knocks on the door with the intent to defraud the homeowner by selling the homeowner fraudulent stock or a nonexistent piece of real estate, for example, something like that. Homeowner invites that defendant into his home or her home. Money changes hands. Paper changes hands. Defendant leaves. He's later charged with a burglary under a California statute. And heaven forbid, if he's up on the federal level, as my client is, he's subjected to this sort of an enhancement when his prior burglary conviction didn't pose any of the risks that are required by the residual clauses. I think that argument would have been a good one, free Terrell. But Terrell has its own definition of roughly similar, and you may feel it's a little too rough, but we're guided by Terrell regardless. How do you distinguish Terrell's determination that it's roughly similar, that it's sufficient? My position being that the language roughly similar in kind to the enumerated offenses encompasses serious risk of injury, because the enumerated offenses do. That takes us, though, to the issue that the government is raising, which is the aberration versus the run-of-the-mill case. And it is certainly possible for almost any, you know, crime other than a direct assault to be committed in such a way as not to create a risk of injury in a particular case. But we have to look at the ordinary case of residential burglary, and I have some difficulty seeing that your examples are the ordinary run-of-the-mill residential burglary, that they're consensual entry in a completely passive kind of financial crime inside. That doesn't seem like the normal case. Well, how I address that is that there's no statistical evidence before the court. None has been presented by the government. Yes, I presented only three cases in which burglaries under California law were committed in that fashion, but it's not to say that that doesn't happen in the ordinary course of events. And it probably does, but there's no empirical evidence before the court. Was there any statistical evidence in James? I don't believe so. I didn't think so either. We have to follow James, and that's what it seems to me Terrell was trying to do, and I'm having difficulty seeing how we could come out your way in light of the cases which now bind us. I see the wiggle room because of this close enough sort of determination, but that's what the Supreme Court has told us to do in James, and we've got Terrell, which we are bound by the majority in Terrell. So I'm having difficulty with your argument of how we can go your way in relationship to the cases that we're required to follow. Such as James. Because of James and Terrell. I think I can distinguish James because that case dealt with an attempted burglary. And it held that an attempted burglary may not require an entry, but since in the James case, you had a non-consensual entry. Well, but if attempted the difficulty with following your logic is this. If an attempted burglary in which no actual entry occurs is sufficient, then how is a consensual entry less dangerous than no entry at all? I guess that part of my argument focuses on the fact that the California statute encompasses, is broad and encompasses consensual entry. Well, I understand that. But my question to you is the Supreme Court and this Court have said that attempted burglary with no entry is categorically a crime of violence because it carries a serious risk of injury, even though no entry ever happened at all. And so you're having to convince us that a consensual entry where the person is actually inside the home carries a smaller risk than somebody who never gets into the residence whatsoever. And I guess I'm having trouble making that leap. Let me see if I can make it easier for the Court to make that leap. Just by saying that I believe that in the situation that I described where the peddler comes knocking on the person's door, there's just no, in my mind, there's no threat of violence there. There's no risk of violence. There just isn't. If, on the other hand, someone walks up to a house, people aren't home, let's say, breaks in, somebody comes home, there's certainly a risk of injury. Police respond, there's certainly a risk of injury. Somebody's home asleep, wakes up, there's certainly a risk of injury. The person's home, the person opens up the door and lets the offending person in, I don't believe that that creates a substantial risk of injury. And I think that that's very important to consider. I think that if the Court allows a residual clause inquiry to apply to any and all of those kinds of crimes, then you'll have, as the dissent argued, you'll open the floodgates to potential defendants that come before the district courts for sentencing who have unfortunately committed, and I'll refer to those, I guess I could best describe them as more benign burglaries, subject to enhancements, to enhanced sentences. I'd liken it to the California Three Strikes Law, which I think it's similar. A defendant commits crimes that constitute strikes, and then his last crime, his third strike, is, for example, possessing a small amount of cocaine, and he's subjected to the possibility of 25 years to life imprisonment. I think that's patently unfair. So I guess I'm also arguing, in fact, I am also arguing fundamental fairness. I would hope that the Court would consider that also in reaching its decision. What do we do with this Cruz case that looks at the violent felony, close quote of the ACCA, and finds that it's like that? How do you respond to that? Do you think that that's an argument that you have to rebut? And specifically in what respect? I'm sorry, Your Honor. In the Cruz case. Yes. Where we found that it's like a violent felony under the ACCA. Is that another area where you feel that you have to show us why Cruz does not help us at all, does not help to turn this case around for reversal? Well, I was hoping and I would hope that the common thread that I had mentioned earlier that I think runs through all these cases, which is that the conduct has to pose a serious risk of injury to the person with control, and it would be sufficient to allow the Court to do that. Thank you, Counsel. Thank you. Mr. Rodra, you have some time remaining. Thank you, Judge Graber. The first point I want to touch on is that I think there's a flawed premise in the defendant's position that the consented entry burglaries that he's marshaled are insufficiently risky. We think that they're sufficiently risky such that it doesn't really matter whether they would be of significant enough quantity to defeat the ordinary case analysis. The critical point is that when you have a consented entry burglary, even if it's to commit a fraud, there's a face-to-face encounter. It's a far cry from the kind of Thomas Crown Affair, you know, immaculately planned cat well planned. So when you have someone, a fraudster, who's gained entry into the victim's house, into their sanctum sanctorum, and if that victim realizes they're being defrauded, there's a very real chance that the encounter would be terminated and that it might escalate to violence. And again, we're talking about probabilities here. So I think that even if the defendant had been able to marshal a greater quantity of these consented entry burglaries, they still wouldn't be sufficient. Of course, he hasn't. Which brings me to the last point, the statistics point. I think Judge Wallace, as you pointed out correctly, the Supreme Court did not have statistics in James, nor did the Supreme Court have them in Begay. They happened to have them in Chambers because that case was interpreting a Federal prior and the Sentencing Commission does a lot of heavy lifting and calculates a lot of statistics. But the Supreme Court in Chambers did not say the statistics have to be marshaled. And it would be problematic, I think, if this Court were to hold as much here, because most States don't have many Sentencing Commissions gathering statistics like what the United States Sentencing Commission was able to provide in Chambers. And as a result, there would be a large number of prior felonies that would not be accountable simply because there just aren't available statistics. Thank you, counsel. We appreciate very much the arguments of both parties. They've been helpful. The case is submitted. That was a good movie, that Thomas Cranmer. Yes, it was. I think you'll find no dissent on that point. I liked the original one better. We'll next hear United States v. Harris. And just for planning purposes of those who are still out in the audience, we'll take a recess between Harris and the next case. Thank you.
judges: Mills, Wallace, Graber